UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| | |
|---|---|
| Case No. | CV 16-02980 DSF (AFMx) |
| Title | Capbran Holdings, LLC, et al. v. Firemall LLC, et al. |
| Date | 8/23/17 |

DALE S. FISCHER, United States District Judge

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff | Attorneys Present for Defendants |
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order GRANTING IN PART Plaintiffs' Motion for Partial Summary Judgment (Dkt. 84) and DENYING Defendants' Motion for Partial Summary Judgment (Dkt. 87)

Plaintiffs Capbran Holdings, LLC and NutriBullet, LLC and Defendants Firemall LLC and Mitchell Berkowitz file cross-motions for partial summary judgment. The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the following reasons, the Court GRANTS IN PART Plaintiffs' motion for partial summary judgment and DENIES Defendants' motion for partial summary judgment.

## I. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). But the moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. Id. at 323–24; Fed. R. Civ. P. 56(c)(1). A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. See Celotex Corp., 477 U.S. at 322. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. Id. at 250–51. "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury . . . could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict . . . ." Anderson, 477 U.S. at 252. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

The Federal Rules of Civil Procedure allow a party to move for partial summary judgment and a court to enter an order stating a material fact - not genuinely in dispute - as established in the case. Fed. R. Civ. P. 56(a), (g). A court may grant partial summary judgment - without determining a claim - to limit issues at trial. See State Farm Fire & Cas. Co. v. Geary, 699 F. Supp. 756, 759 (N.D. Cal. Sep. 15, 1987).

"A district court's ruling on a motion for summary judgment may only be based on admissible evidence." Oracle, 627 F.3d at 385. A party seeking to admit evidence bears the burden of proof to show its admissibility. Id. But courts need not scour the record to determine if evidence is admissible. Id. at 385–86.

## II.   FACTS[1]

---

[1] Unless otherwise noted, the facts cited by the Court are undisputed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Plaintiffs Capbran Holdings, LLC and NutriBullet, LLC are California companies with common ownership in a licensor-licensee relationship. Am. Compl. ¶¶ 1-3. They sell the NutriBullet Pro, a market-leading blender. Defs.' Resp. to Pls.' Uncontroverted Facts (DRUF) 1. Capbran owns related copyrights, design patents, and trademarks - including one for trade dress - for its products. DRUF 12-17. Defendant Mitchel Berkowitz is the sole owner and president of Defendant Firemall, LLC. DRUF 70. Plaintiffs allege Defendants sold counterfeit NutriBullet Pro products (accused products). Am. Compl. ¶ 17-18. From December 2016 to March 2017, Firemall purchased 5,485 accused products from Joseph Schwartz, who is not an authorized distributor of Plaintiffs' products. DRUF 8, 24-25.[2]

Firemall sold NutriBullet Pro products through its own website and Amazon. DRUF 6. Firemall sold the accused products on Amazon from December 4, 2015 to April 12, 2016. DRUF 26-27. Firemall received a notification from Amazon on March 9, 2016 that its listing for the NutriBullet Pro had been removed due to a customer complaint about the authenticity of the product. See Pls.' Mot. Summ. J., Trojan Decl., Ex. 106. In early April 2016, Firemall received another notification from Amazon, informing it of a complaint from Capbran that Firemall was selling counterfeit goods. DRUF 42. Firemall's head buyer, Itta "Ellen" Freund, declares that Schwartz sent Firemall an invoice from HWHealth to show the source of the accused products. Defs.' Opp. to Pls.' Mot. Summ. J., Freund Decl. ¶ 4, 28. She further declares that Firemall ceased sales immediately, once she realized the accused products might be counterfeit. Id. ¶ 28. Firemall now has 620 units of the accused products in inventory.[3] DRUF 96.

Berkowitz also owns Carolinas, an online retailer that "has the ability to sell products that Firemall sources." DRUF 28, 30. Carolinas sold the accused products on Amazon. DRUF 31. In their supplemental briefing, Plaintiffs submit an e-mail sent by Berkowitz on Apil 20, 2016 in response to Amazon's notification of a complaint regarding the authenticity of the NutriBullet Pro product sold by Carolinas. Supp. ISO

---

[2] Both parties misstate these dates. The supporting evidence describes purchases from December 2015 to March 2016.

[3] The Court previously stayed the parties' motions for summary judgment pending the resolution of Plaintiffs' motion for contempt against Defendants for discovery abuses, including a failure to allow inspection of inventory. Dkt. 120. The magistrate judge granted the motion in part and ordered Defendants to allow inspection of the accused products. Dkt. 141. After Plaintiffs completed their inspection and other discovery, the parties submitted supplemental briefing regarding the pending motions for summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

Pls.' Mot. Summ. J., Dang Decl., Ex. 25. The notice specifies that the seller can respond by sending copies of invoices from the supplier. Id. In the e-mail, Berkowitz instructs his employee to print out an invoice from Strasser, stamp it paid, "crumple it a bit," and then scan and send it; he also notes that invoices had been sent in the past from Strasser, a company in which Berkowitz has investments. Id., Ex. 25; Ex. 20 at 42:14-16.

Berkowitz's role in the alleged infringement is disputed. Plaintiffs submit evidence that Berkowitz had final decision-making authority on business operations and controlled the cash flow of Firemall. DRUF 73, 75-76. Berkowitz asserts he does not participate in the daily activities of Firemall, such as buying, which are handled by Freund. Defs.' Opp. to Pls.' Mot. Summ. J., Berkowitz Decl. ¶ 5.

### III. DISCUSSION

#### A. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs seek summary judgment on their claims of unfair competition and trademark, trade dress, copyright, and patent infringement. They do not seek a determination that Defendants willfully infringed their intellectual property. Reply ISO Pls. Mot. Summ. J. at 14.

##### 1. Firemall's Liability

###### a. Trademark and Trade Dress Infringement

Plaintiffs bring trademark and trade dress infringement claims under 15 U.S.C. § 1114(1)(a), which provides:

> (1) Any person who shall, without the consent of the registrant - (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

To state a trademark or trade dress infringement claim, a plaintiff must plead (1) that it has a valid, protectable trademark or trade dress and (2) that the alleged infringer's

**MEMORANDUM**

use of the same or a similar mark causes a likelihood of confusion in the minds of the relevant consuming public.  See Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 841 (9th Cir. 1987).  It is undisputed that Capbran owns the trademark and trade dress at issue.  It is also undisputed that Firemall (1) was not an authorized dealer and (2) sold the accused products on Amazon.  Photographs of the accused products submitted in Plaintiffs' supplemental brief clearly show the applicable trademarks.  Supp. ISO Pls.' Mot. Summ. J., Yoon Decl., Ex. 11; see Am. Compl., Ex. 1.  Further, the shape of the products appears identical to the registered trade dress.  Compare Id., Ex. 8 with Pls.' Mot. Summ. J., Suzumoto Decl., Ex. 1.  Defendants do not dispute the authenticity of the photographs.  For that matter, Defendants - in their reply to Plaintiffs' supplemental brief - provide no argument that Firemall did not infringe Capbran's intellectual property rights.  Although Defendants contend they were part of the Fulfillment by Amazon program, under which inventory may have been commingled, the only evidence Defendants submit is what appears to be a generic Amazon document describing the program.  Defs.' Opp. to Pls.' Mot. Summ. J. at 9; Defs. Mot. Summ. J., Cohen Decl., Ex. M.  Defendants submit no evidence that Firemall or the product would have qualified for the "Stickerless, Commingled Inventory" preference described in this document.  Even assuming they had done so, it there is no evidence that the products returned to Firemall from Amazon weren't the ones it had sent to Amazon.  See Defs. Mot. Summ. J., Cohen Decl., Ex. M.

The "critical determination" in a trademark infringement claim is "whether [the] alleged trademark infringer's use of [the] mark creates a likelihood that the consuming public will be confused as to who makes what product." Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 632 (9th Cir. 2007) (citation omitted).  "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." Dreamwerks Prod. Grp., Inc. v. SKG Studio, d/b/a Dreamworks SKG, 142 F.3d 1127, 1129 (9th Cir. 1998) (footnote omitted).  The Ninth Circuit has identified eight factors that should be considered in making this assessment.  AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979), abrogated in part on other grounds as recognized in Mattel, Inc. v. Walking Mountain Prod., 353 F.3d 792, 810 n.19 (9th Cir. 2003).

Assessing likelihood of confusion under Sleekcraft is generally a factual determination, but there are no material disputed facts here.  Where virtually identical marks are used with identical products or services, likelihood of confusion "follow[s] as a matter of course." Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1046, 1056 (9th Cir. 1999); see, e.g., Philip Morris USA Inc. v. Shalabi, 352 F.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

MEMORANDUM

Supp. 2d 1067, 1073 (C.D. Cal. Oct. 25, 2004)(courts have repeatedly concluded that "in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination . . . because counterfeit marks are inherently confusing")(citations omitted). Defendant Berkowitz himself admits that the product looks like a genuine Nutribullet, and he would purchase it himself if he saw it in a store. DRUF 69.

It is undisputed that Plaintiffs' NutriBullet Pros have trademark notices on their retail boxes, bear Underwriters Laboratories markings on their backs, and include certain identifying information underneath their bases. DRUF 56-57, 60-64. The submitted photographic evidence of accused products in Firemall's inventory shows that the products lack all these indicia of authenticity. Supp. ISO Pls.' Mot. Summ. J., Yoon Decl., Ex. 9-11. That Defendants' products may have sold at a higher price point or had a low incidence of defects fails to support a reasonable inference that the goods were genuine, particularly in light of the substantial uncontroverted evidence adduced by Plaintiffs that the accused goods were not genuine. Here, the Court concludes that the undisputed evidence is susceptible of only one conclusion - that the accused products were counterfeit goods. Consequently, Plaintiffs have established that the unauthorized use of the marks was likely to lead to confusion among consumers as to the source of the accused products. The Court grants summary judgment in Plaintiffs' favor as to Firemall's liability for trademark and trade dress infringement.

      b.    <u>**Copyright Infringement**</u>

To establish copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991). Capbran owns copyrights in the retail box, user guide, and recipe books for the NutriBullet Pro registered with the Copyright Office under Reg. Nos. VA 1–968–778, VA 1-841-670, and TX 7-557-487. DRUF 16. Defendants contend that they did not copy Capbran's materials. DRUF 66.[4] But Plaintiffs also allege that the counterfeit products included "unauthorized" copies of the retail box, users guide, and recipe books, and these materials were sold "in connection with Firemall's sale of counterfeit products in violation of 17

---

[4] Defendants failed to cite any evidence in support of this – and other – contentions, and so summary judgment in Plaintiffs' favor is justified for this reason, as well. <u>See</u> DRUF 10, 66-67; <u>see also</u> Fed. R. Civ. P. 56(c)(1) (party asserting genuinely disputed fact must cite to record); <u>Harper</u>, 877 F.2d at 731 ("[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment.).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

MEMORANDUM

U.S.C. § 501." Am. Compl. ¶¶ 79-81. Defendants dispute that those materials are "fake," but do not dispute that the materials are identical to the original copyrighted works. DRUF 67. While Defendants appear to dispute *who* copied the boxes or books, they do not dispute that they distributed these identical, unauthorized copies of the boxes and books when selling the counterfeit products. DRUF 10, 67. Because it is undisputed that Capbran has valid copyrights in these materials and Defendants distributed unauthorized, identical copies of them, summary judgment is granted in Plaintiff's favor as to copyright infringement. See 17 U.S.C. § 106 (direct infringement of exclusive rights includes unauthorized reproduction and distribution).

### c. Design Patent Infringement

Infringement of a design patent is evaluated in a two-step process. "First, the court must construe the claims of the design patent to determine their meaning and scope." Arminak and Assocs., Inc. v. Saint-Gobain Calmar, Inc., 501 F.3d 1314, 1319 (Fed. Cir. 2007) (citing OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1404-05 (Fed. Cir. 1997)). Design patents typically are claimed as shown in drawings, though district courts have the discretion to construe design patents with a detailed textual description. Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113, 1116 (Fed. Cir. 1998). The court then compares the construed claims to the accused design. Arminak, 501 F.3d at 1320. The accused product infringes the design patent if "the designs have the same general visual appearance, such that it is likely that the purchaser (or the ordinary observer) would be deceived into confusing" the two designs. Id.; see also Crocs, Inc. v. Int'l Trade Comm'n, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (design patent is infringed if "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design."); Gorham Co. v. White, 81 U.S. 511, 528 (1871) ("[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.").

"[I]n conducting a design patent infringement analysis, the patented design is viewed in its entirety, as it is claimed. The ultimate question requires determining whether 'the effect of the whole design is substantially the same.'" Payless Shoesource, Inc. v. Reebok Int'l Ltd., 998 F.2d 985, 990-91 (Fed. Cir. 1993) (citing L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1125 (Fed. Cir. 1993) (quotation marks and alterations omitted)). "[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." Id. (citing

Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 1444 (Fed. Cir. 1984)); see also Crocs, 598 F.3d at 1303-04 (explaining that the focus of the infringement analysis is the "overall impression of the claimed ornamental features" rather than "small differences in isolation.").

"[T]he ordinary observer is deemed to view the differences between the patented design and the accused product in the context of the prior art." Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 676 (Fed. Cir. 2008). "[I]f the accused infringer elects to rely on the comparison prior art as part of its defense against the claim of infringement, the burden of production of that prior art is on the accused infringer." Id. at 678. Defendants submit no evidence of prior art. Because the accused products appear identical to the figures shown in Plaintiffs' design patents D554,427, D500,633, and D532,255, and Firemall sold these products on Amazon, the Court finds no genuine dispute that Firemall infringed Plaintiffs' design patents. Compare Supp. ISO Pls.' Mot. Summ. J., Yoon Decl., Exs. 7-8 with Am. Compl., Ex. 3.

### d. Unfair Competition

Because Plaintiffs' unfair competition claim arises from Firemall's infringement of Plaintiffs' trademark, trade dress, copyright, and design patent rights, the Court also grants summary judgment in Plaintiffs' favor as to this claim.

### 2. Berkowitz's Liability

Although not pleaded in their amended complaint, Plaintiffs seek to impose alter ego liability on Berkowitz. Before personal liability can be imposed under this theory, California law requires: "First, that the corporation is not only influenced and governed by that person, *but that there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased*; [and] second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice." Firstmark Capital Corp. v. Hempel Fin. Corp., 859 F.2d 92, 94 (9th Cir.1988) (citing Wood v. Elling Corp., 20 Cal. 3d 353 (1977)).

Factors to be considered in determining whether the doctrine applies include commingling of funds and other assets, the individual holding himself out as liable for the debts of the corporation, ownership and control of the corporation by the individual, inadequate capitalization, disregard of corporate formalities, and lack of segregation of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

corporate records. See, e.g., Mid-Century Insurance Co. v. Gardner, 9 Cal. App. 4th 1205, 1213 n.3 (1992); Sonora Diamond Corp. v. Superior Court of Tuolumne County, 83 Cal. App. 4th 523, 538-539 (2000). In addition, "under California law the kind of inequitable result that makes alter ego liability appropriate is an abuse of the corporate form, such as under-capitalization or misrepresentation of the corporate form to creditors." Firstmark, 859 F.2d at 94. Both parties seek partial summary judgment on this issue. Both have presented material facts to support their position. Summary judgment is denied.

Plaintiffs also contend Berkowitz is liable because he knew or should have known the accused products were counterfeit. The Ninth Circuit has held that a "corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." Comm. for Idaho's High Desert, Inc. v. Yost, 92 F.3d 814, 823 (9th Cir. 1996) (quoting Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1021 (9th Cir. 1985)). The Ninth Circuit has also noted that "[c]ases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct . . . or the 'central figure' in the challenged corporate activity." Davis v. Metro Prods., Inc., 885 F.2d 515, 524 n.10 (9th Cir. 1989) (internal citations omitted). A corporate officer may be liable for indirect patent infringement if he "actively assist[ed]" or "personally participat[ed]" in the corporation's infringement. Wordtech Sys., Inc. v. Integrated Networks Sols., Inc., 609 F.3d 1308, 1316-17 (Fed. Cir. 2010).

The Court finds a material issue of fact as to Berkowitz's personal liability for infringement. Plaintiffs submit evidence showing Berkowitz directed his employee to print out an invoice from Strasser, a company in which he has invested, stamp it paid, "crumple it a bit," and then submit it to Amazon to address an authenticity issue for a Carolinas listing of the NutriBullet Pro. Based on the evidence submitted, Schwartz may have been the only supplier of the NutriBullet Pro products. Given that there is no evidence connecting Schwartz and Strasser, a reasonable inference could be made that Berkowitz directed the fabrication of an invoice from Strasser. Further, Berkowitz's April 20, 2016 e-mail appears to post-date the early April notification from Amazon regarding Capbran's complaint that Firemall was selling counterfeit NutriBullet Pros. From this evidence, the trier of fact could reasonably infer that Berkowitz both participated in and actively assisted with the infringement. But Defendants submit evidence that Berkowitz was not involved in Firemall's day-to-day operations; these were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

purportedly handled by Freund. The Court denies Plaintiffs' summary judgment as to Berkowitz.

**B. <u>Defendants' Motion for Partial Summary Judgment</u>**

Defendants' motion addresses Berkowitz's liability and willful infringement. As discussed above, there is a triable issue as to Berkowitz's liability.

A defendant may be liable for willful trademark or trade dress infringement for knowing conduct or willful blindness. <u>See</u> <u>Louis Vuitton S.A. v. Lee</u>, 875 F.2d 584, 590 (7th Cir. 1989). "To be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate." <u>Hard Rock Cafe Lic. Corp. v. Concession Servs.</u>, 955 F.2d 1143, 1149 (7th Cir. 1992). A plaintiff may be entitled to enhanced damages for willful patent infringement where a defendant "acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer.'" <u>WesternGeco L.L.C. v. ION Geophysical Corp.</u>, 837 F.3d 1358, 1361-62 (Fed. Cir. 2016) (citation omitted). Willfulness is an issue generally inappropriate for summary judgment because "willfulness requires an assessment of a defendant's state of mind." <u>Friedman v. Live Nation Merch., Inc.</u>, 833 F.3d 1180, 1186 (9th Cir. 2016).

Based on the evidence discussed above,[5] a jury could reasonably infer that Berkowitz suspected infringement, yet chose to send Amazon a fabricated invoice in order to hide past infringement and continue his company's sales of the NutriBullet Pro. Although Carolinas is not a defendant here, given Berkowitz owns both Firemall and Carolinas and it is disputed whether the companies share inventory, a jury could reasonably infer that Defendants are liable for willful infringement of Plaintiff's intellectual property rights. Defendants' motion for partial summary judgment is denied.

**IV. CONCLUSION**

Plaintiffs' Motion for Partial Summary Judgment is GRANTED IN PART and Defendants' Motion for Partial Summary Judgment is DENIED.

IT IS SO ORDERED.

---

[5] Plaintiffs cite other material facts that could lead a jury to infer that the infringement was willful.